IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

––––––––––––––––––––––––––

THE STATE OF ARIZONA,
*Appellee*,

*v.*

BRUCE WAYNE O'LAUGHLIN JR.,
*Appellant*.

No. 2 CA-CR 2015-0134
Filed May 5, 2016

––––––––––––––––––––––––––

Appeal from the Superior Court in Pima County
No. CR20140970001
The Honorable Christopher C. Browning, Judge

**AFFIRMED**

––––––––––––––––––––––––––

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Tanja K. Kelly, Assistant Attorney General, Tucson
*Counsel for Appellee*

Steven R. Sonenberg, Pima County Public Defender
By Katherine A. Estavillo, Assistant Public Defender, Tucson
*Counsel for Appellant*

---

**OPINION**

---

Judge Miller authored the opinion of the Court, in which Presiding Judge Vásquez and Chief Judge Eckerstrom concurred.

---

M I L L E R, Judge:

¶1      After a jury trial, Bruce Wayne O'Laughlin Jr. was convicted of burglary and possession of burglary tools, and sentenced to concurrent prison terms totaling nine years. On appeal, O'Laughlin contends the trial court erred by adding "and/or" to the list of burglary tools on the verdict form and, in the alternative, that the indictment was duplicitous. Although we discourage the omission of a conjunction in a charging document and the use of "and/or" in jury instructions to remedy the ambiguity caused by the missing conjunction, in this case we find no error and affirm.

## Factual and Procedural Background

¶2      "We view the facts in the light most favorable to sustaining the jury's verdicts." *State v. Guarino*, 238 Ariz. 437, n.1, 362 P.3d 484, 486 n.1 (2015). In February 2014, a witness called 9-1-1 to report a burglary after she observed O'Laughlin and his codefendant, Sandy McClure, engaging in suspicious behavior at her neighbor's home. They were standing in the open door of her neighbor's truck and had bicycles nearby. They then rode away with O'Laughlin carrying a "briefcase . . . a box or something," across his chest. The responding officer searched the neighborhood and found two bicycles on the sidewalk in front of a house a few blocks away. As the officer exited his vehicle, he saw O'Laughlin getting out of a truck parked in the driveway. McClure also stepped out from behind another truck in the driveway. The owner of the first truck gave the officer permission to look inside. The officer found a briefcase and a bone-handled knife that matched the items missing from the victim's truck.

**¶3**         Police found a flashlight and one latex glove in McClure's pockets.  Additional latex gloves were located in the first truck underneath the middle console.  O'Laughlin and McClure were arrested and charged with three counts of third-degree burglary and one count of possession of burglary tools, "to wit: flashlight, knife, gloves."  McClure pleaded guilty and testified at O'Laughlin's trial.  At the state's request, two of the burglary charges were dismissed as to O'Laughlin, and he was convicted and sentenced as described above.  This appeal followed.

## Possession of Burglary Tools

### Indictment and Verdict Form

**¶4**         O'Laughlin argues the lack of a conjunction in the indictment's list of burglary tools—"flashlight, knife, gloves"— should have been read to mean "and"; therefore, the trial court erred by adding "and/or" before "gloves" on the verdict form.  In the alternative, he argues that if "and/or" is the proper interpretation of the indictment, it is duplicitous because there was a danger the jurors were not unanimous as to which tool he possessed.  We generally review the trial court's decisions regarding verdict forms for an abuse of discretion,[1] *State v. Larin*, 233 Ariz. 202, ¶ 29, 310 P.3d 990, 998-99 (App. 2013), and where, as here, no objection was made to the allegedly duplicitous indictment before trial, we review for fundamental, prejudicial error, *see State v. Payne*, 233 Ariz. 484, ¶ 80, 314 P.3d 1239, 1262-63 (2013).  Ultimately, both issues raise a question of statutory interpretation, which we review de novo.  *State v. Brown*, 217 Ariz. 617, ¶ 7, 177 P.3d 878, 881 (App. 2008).

---

[1]The state argues any error in the verdict forms was invited because O'Laughlin's objection was unclear.  When the state requested "and/or" be added to the forms, O'Laughlin responded, "Notice is only given of flashlight, knife and gloves.  He can argue one or all."  Although the second sentence was arguably confusing, it does not constitute invited error.  *See State v. Lucero*, 223 Ariz. 129, ¶¶ 20-21, 220 P.3d 249, 256 (App. 2009) (party must take "independent affirmative unequivocal action to initiate" error before invited error rule applies).

**¶5**        We begin with the question of whether the indictment was duplicitous because it guides our analysis of the other arguments.  A duplicitous indictment is one that on its face alleges multiple distinct and separate offenses in one count.  *State v. Klokic*, 219 Ariz. 241, ¶ 10, 196 P.3d 844, 846 (App. 2008).  Duplicitous indictments may prejudice a defendant by not providing adequate notice of the charge to be defended, presenting the risk of a non-unanimous jury verdict, and making impossible the precision needed to assert double jeopardy in a later prosecution.  *State v. Whitney*, 159 Ariz. 476, 480, 768 P.2d 638, 642 (1989).  An indictment is not duplicitous, however, if a count alleges only one offense, even if that offense may be committed in different ways.  *See State v. Cotten*, 228 Ariz. 105, ¶ 6, 263 P.3d 654, 657 (App. 2011); *State v. Paredes-Solano*, 223 Ariz. 284, ¶¶ 5, 9, 222 P.3d 900, 903, 904 (App. 2009); *State v. Winter*, 146 Ariz. 461, 464-65, 706 P.2d 1228, 1231-32 (App. 1985), *abrogated on other grounds by State v. Kamai*, 184 Ariz. 620, 623, 911 P.2d 626, 629 (App. 1995); *State v. Dixon*, 127 Ariz. 554, 561, 622 P.2d 501, 508 (App. 1980); *see also Andersen v. United States*, 170 U.S. 481, 500-01 (1898) (indictment not duplicitous where murder may have been accomplished by different means).

**¶6**        Possession of "burglarious instruments" has been subject to criminal liability since territorial days, *see* Ariz. Pen. Code, § 424 (1901), but the parties cite to no cases, and our research discloses none, that discuss whether A.R.S. § 13-1505 involves separate offenses based on the nature or type of tool or a single offense.[2]  Nor does the language indicate whether possession of multiple tools at the same time constitutes multiple crimes.[3]  One

---

[2] Section 13-1505(A) consists of separate paragraphs for (1) "any explosive, tool, instrument or other article" and (2) "a motor vehicle manipulation key or master key."  Because this case did not involve any kind of key, we do not consider paragraph (2) in our analysis.

[3]"A person commits possession of burglary tools" under § 13-1505(A)(1) by "[p]ossessing any explosive, tool, instrument or other article adapted or commonly used for committing any form of

indication of legislative purpose is its placement in the criminal code—currently and in 1901—in a chapter addressing property crimes such as trespass and burglary. *See* § 13-1505 (located in title 13, chapter 15, entitled "Criminal Trespass and Burglary"); Ariz. Pen. Code, § 424 (1901) (located in title 13, entitled "Of Crimes Against Property"). This shows the legislature considered it a crime against property. Moreover, because the statute is directed at preventing burglary using one or many tools, the allowable unit of prosecution is unaffected by the number of tools. *See State v. Jurden*, 237 Ariz. 423, ¶ 14, 352 P.3d 455, 459-60 (App. 2015) (resisting arrest statute in chapter with other crimes against state authority, indicating allowable unit of prosecution was each arrest resisted rather than each officer resisted), *review granted* (Ariz. Jan. 5, 2016). The harm to be prevented is the property crime itself.

¶7 Several recent duplicity cases illustrate that the distinction between a single-offense and multiple-offense statute often relies on the harm resulting from the crime. In *Paredes-Solano*, the defendant was charged with sexual exploitation of a minor under A.R.S. § 13-3553 arising from acts described in paragraphs (A)(1) and (A)(2) of that section. 223 Ariz. 284, ¶ 16, 222 P.3d at 906. The state regarded the acts as describing a single offense, arguing to the jury it did not have to differentiate between or agree on acts described in (A)(1) versus (A)(2). *Id.* ¶ 14. Based on statutory analysis and legislative history, we concluded the legislature separated (A)(1) and (A)(2) acts in order to create two separate offenses, albeit described in a single statute. *Id.* ¶¶ 9-15. Paragraph (A)(1) involves harm to a child by creating a sexually exploitive image, whereas (A)(2) involves perpetuating the harm by distributing the image. *Id.* ¶ 10. Because the jury was permitted and encouraged to reach non-unanimous decisions involving separate offenses that were charged in a single count, the defendant's right to a unanimous verdict was violated. *Id.* ¶¶ 18, 22. That violation of a constitutional right constituted fundamental and reversible error. *Id.* ¶ 22, *citing* Ariz. Const. art. II, § 23.

---

burglary . . . and intending to use or permit the use of such an item in the commission of a burglary."

¶8        In contrast, *State v. Delgado* illustrates the lack of duplicity when an offense is a single crime.[4] 232 Ariz. 182, ¶¶ 20-24, 303 P.3d 76, 82-83 (App. 2013).   In that case, the defendant was charged with aggravated assault pursuant to A.R.S. § 13-1204(B), a subsection specifically addressing strangulation or suffocation.   232 Ariz. 182, ¶¶ 20-21, 303 P.3d at 82.   There were three means of committing the offense:   intentionally, knowingly, or recklessly causing physical injury; intentionally placing the other person in reasonable apprehension of imminent physical injury; or, knowingly touching another with intent to injure.   *Id.* ¶ 21.   This mirrors the language of the simple assault statute, which has been interpreted as listing three separate crimes.   *Id.* ¶ 22.   Unlike a simple assault, however, where the harm could be injury, apprehension of injury, or touching with intent to injure, *see* A.R.S. § 13-1203(A), there was a single harm under § 13-1204(B)—impeding the normal breathing or circulation of blood of another person.   *Delgado*, 232 Ariz. 182, ¶¶ 22-23, 303 P.3d at 82-83.   The court held that § 13-1204(B) was a single offense and the jury was not required to agree on the underlying "'form'" of assault.   *Delgado*, 232 Ariz. 182, ¶ 24, 303 P.3d at 83.

¶9        Similarly, in *Payne*, 233 Ariz. 484, ¶¶ 80, 88, 314 P.3d at 1262, 1263, the defendant was charged with child abuse because he allowed a child to starve to death or he failed to seek medical attention.   The court determined that each count of the indictment charged just one crime of child abuse, "essentially by neglect," and "he was not entitled to a unanimous verdict on the manner in which the act was performed."   *Id.* ¶ 90.   Although there were multiple factual scenarios charged, there was just one crime and therefore no duplicity.[5] *Id.* ¶¶ 88, 90.

---

[4] *Delgado* addresses a duplicitous charge rather than a duplicitous indictment.   *See* 232 Ariz. 182, ¶¶ 18, 24, 303 P.3d 76, 82, 83 (App. 2013), *quoting Klokic*, 219 Ariz. 241, ¶ 12, 196 P.3d at 847.   But the potential hazards of a non-unanimous jury verdict and impossibility of pleading prior jeopardy remain the same in either instance.   *Klokic*, 219 Ariz. 241, ¶ 12, 196 P.3d at 847.

[5]The *Payne* court relies in part on *State v. Dann*, 220 Ariz. 351, ¶¶ 76-81, 207 P.3d 604, 619-20 (2009).   *Payne*, 233 Ariz. 484, ¶ 81, 314

¶10      Here, the purpose of the burglary tools statute is to prevent a person who has formed the intent to commit burglary from possessing any tool that will aid him in unlawfully entering a structure to commit a theft or other felony. *See State v. Brown*, 37 P.3d 572, 583 (Haw. Ct. App. 2001) ("'[T]he purpose of all [burglary tools] statutes is to deter or prevent the commission of burglary and related offenses by enabling enforcement authorities to act before the prospective burglar has had the opportunity to gather his [or her] tools, weapons, and plans and strike in secret.'"), *quoting Validity, Construction, and Application of Statutes Relating to Burglars' Tools*, 33 A.L.R.3d 798, 805 (1970 & Supp. 2001); *cf.* Model Penal Code § 5.06(1) ("A person commits a misdemeanor if he possesses any instrument of crime with purpose to employ it criminally."). Whether a person with the intent to commit a burglary possesses a flashlight, gloves, or a knife does not alter the harm. *See Payne*, 233 Ariz. 484, ¶ 88, 314 P.3d at 1264.

¶11      We find support for this conclusion in *Dixon*, a case addressing the theft statute. In that case, a defendant charged with theft under A.R.S. § 13-1802 requested two separate verdicts because the jury was instructed that theft could involve controlling property with the intent to deprive or controlling property knowing or having reason to know that it was stolen. 127 Ariz. at 560-61, 622 P.2d at 507-08. The trial court denied Dixon's request for separate verdicts. *Id.* at 561, 622 P.2d at 508. In affirming the conviction, the court held that the offense of theft was a single act of "controlling the property of another" under differing circumstances or states of mind. *Id.* at

P.3d at 1263. Although *Dann* involved a capital crime aggravating factor, the issue raised was whether a verdict form allowed a non-unanimous verdict because multiple factual scenarios were listed for a single aggravating factor. 220 Ariz. 351, ¶¶ 76-78, 207 P.3d at 619-20. The form asked jurors "if the state proved beyond a reasonable doubt that the murder of either of the other victims 'or both' was committed during the murder at issue." *Id.* ¶ 77. There was no risk of a non-unanimous verdict because the jury could reach the verdict based on "a combination of alternative findings," so long as there was unanimity that "at least one other murder occurred during the murder at issue." *Id.* ¶ 79.

562, 622 P.2d at 509. Therefore, individual jurors could have reached differing conclusions about whether Dixon intended to deprive the owners of their property or simply knew it was stolen, as long as all twelve agreed he knowingly controlled the property under one of those conditions. *Id.* at 561-62, 622 P.2d at 508-09.

**¶12** *Dixon* guides our classification of § 13-1505 as a single offense that can be committed with multiple tools. Because it is a single offense, the indictment was not duplicitous. Further, the jury was instructed that possession of burglary tools required proof that O'Laughlin "possessed any tool, instrument, or other article adapted or commonly used for committing burglary; *and* . . . intended to use or permit the use of such an item in the commission of a burglary." This correctly stated the law and was sufficient to ensure that all jurors concluded beyond a reasonable doubt that he possessed a burglary tool with the requisite mental state.

**¶13** O'Laughlin also argues the verdict form listing the burglary tools as "flashlight, knife, and/or gloves" did not properly reflect the indictment, which contained no conjunction.[6] He contends the "common rules of grammar" dictate that the commas in the list replace the word "and," citing as an example the sentence, "he is a strong, healthy man." But that example only illustrates how a comma can separate coordinate adjectives to modify their shared target noun. *See* Bryan A. Garner, *The Redbook: A Manual on Legal Style* § 1.7 (2d ed. 2006); *The Chicago Manual of Style* § 6.39 (15th ed. 2003). The example does not imply inclusion of "and" where there is a list of items. The general rule is that commas assume the character of the conjunction used before the last item. *See Palmer v. Martinez*, 42 So. 3d 1147, 1153-54 (La. Ct. App. 2010) ("when there is a final conjunction (e.g., 'and' or 'or') in the series used before the

---

[6] Our holding that § 13-1505 involves a single offense necessarily means that the usual conjunction is "or." This conclusion, however, does not necessarily foreclose the state from being required to prove the entire list of tools if the charge uses "and," because to do otherwise might mislead the defendant and confuse the jury. For this reason, we address whether this charge could have reasonably been interpreted to imply "and."

last term, the comma should be read as an 'and' or 'or,'" respectively). This interpretive rule is unhelpful if a conjunction is missing from the sentence.

¶14      As a rhetorical device, the conjunction is purposefully omitted to create an asyndeton. The asyndeton can speed up a sentence, suggest unity of the listed items, or indicate disorder. *See Encyclopedia of Rhetoric and Composition* 41 (Theresa Enos ed., 1996) (examples include Caesar's declaration, "I came, I saw, I conquered," and, from Abraham Lincoln's Gettysburg Address, "The government of the people, by the people, for the people shall not perish from this earth"); *see also* Linda L. Berger, *Studying and Teaching "Law as Rhetoric": A Place to Stand*, 16 Legal Writing: J. Legal Writing Inst. 3, 51 n.179 (2010). In legal texts, the general rule interpreting asyndetic sentences is to imply "and" as the final coordinating conjunction. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 119 (2012). But as Garner and Justice Scalia note, "[S]uch a construction could be read as a disjunctive formulation, [therefore] most drafters avoid it." *Id.* at 119. Indeed, the general rhetorical rule does not appear to apply in the interpretation of non-persuasive legal texts such as contracts or statutes. *See, e.g., Preis v. Lexington Ins. Co.*, 508 F. Supp. 2d 1061, 1070 (S.D. Ala. 2007) (missing conjunction in insurance contract read as "or" where any other reading would have absurd result); *compare* 7 U.S.C.A. § 136(hh)(3)(B) n.2 (annotation suggests missing word should be "or"), *and* 8 U.S.C.A. § 1324a(b)(1)(B) n.1 (same), *with* 12 U.S.C.A. § 1715z-14(b) n.1 (annotation suggests missing word should be "and"), *and* 15 U.S.C.A. § 5201(b) n.1 (same). We conclude that because the charge omitted a conjunction, it could be read in the conjunctive or disjunctive. Thus, the trial court did not abuse its discretion by denying O'Laughlin's implied request that the word "and" be added to the verdict form and granting the state's request to include "and/or."[7]

---

[7]Although the addition of "and/or" did not create legal error, its use is discouraged because the reader is not informed whether the conjunctive or disjunctive applies. *See* Scalia & Garner, *supra*, at 125 (criticizing "and/or" as "unfortunate" and "a drafting

**Sufficiency of the Evidence**

¶15        Finally, O'Laughlin argues there was insufficient evidence to support a conviction on the burglary tools count. We review a claim of insufficient evidence de novo. *State v. West*, 226 Ariz. 559, ¶ 15, 250 P.3d 1188, 1191 (2011). The test is "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* ¶ 16, *quoting State v. Mathers*, 165 Ariz. 64, 66, 796 P.2d 866, 868 (1990). The evidence required for a conviction may be circumstantial or direct. *State v. Pena*, 209 Ariz. 503, ¶ 7, 104 P.3d 873, 875 (App. 2005).

¶16        Because the jury could have understood the form of verdict to require proof that O'Laughlin possessed all three items with the requisite intent, we examine the arguments for each tool. The flashlight was found on McClure's person, and she admitted she had used it to look in the back of the truck at some point during the burglary. The state focused on accomplice liability with regard to the burglary tools in its closing argument. O'Laughlin argues on appeal that he lacked the mens rea necessary to be found guilty as an accomplice to possession of the flashlight as a burglary tool, contending the use of tools is not a "reasonably foreseeable" consequence of entering an unlocked car. *See* A.R.S. § 13-303(A)(3) (defining accomplice liability). But McClure testified that "it wasn't quite light" yet when she looked in the truck with the flashlight and burglarized it, making use of the flashlight reasonably foreseeable. Further, O'Laughlin contends the state did not present evidence that a flashlight is a tool "commonly used for committing any form of burglary." *See* § 13-1505(A)(1). But whether such a tool is a burglary tool "depends on the use to which the object is put," *State v. Smith*,

_____

blemish"); Bryan A. Garner, *Garner's Dictionary of Legal Usage* 57-58 (3d ed. 2011) (noting "*and/or* has been vilified for most of its life—and rightly so"); William Strunk Jr. & E.B. White, *The Elements of Style* 40 (4th ed. 2000) (defining "and/or" as "[a] device, or shortcut, that damages a sentence and often leads to confusion or ambiguity").

103 Ariz. 490, 492, 446 P.2d 4, 6 (1968) (analyzing former burglary statute), and here the flashlight was used in the burglary.

¶17 Regarding the gloves, O'Laughlin argues there was no direct evidence O'Laughlin used gloves in the burglary. However, there was circumstantial evidence. An eyewitness saw O'Laughlin and McClure stand in the open door of her neighbor's truck and then ride away on bicycles. When a police officer found them, McClure had one glove in her pocket, and more gloves were found in the truck near where O'Laughlin had been sitting. Items missing from the neighbor's truck were also found near O'Laughlin. There was sufficient evidence O'Laughlin possessed the gloves with intent to use them in a burglary, as required by the statute. § 13-1505(A)(1).

¶18 O'Laughlin argues the knife was not a burglary tool because it was stolen from the truck, not used to enter the truck. However, there was evidence some sort of tool was used to pry open the metal lock on the briefcase during the burglary, as well as evidence the briefcase and knife were stolen from the same truck. The state presented sufficient evidence to support a guilty verdict for possession of burglary tools.

## Disposition

¶19 We affirm O'Laughlin's convictions and sentences.