Robert G. HARBISON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 682S246.

Supreme Court of Indiana.

Aug. 31, 1983.

Ind., 398 N.E.2d 1260, 1264, *cert. denied,* (1980) 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. (citations omitted).

Susan K. Carpenter, Public Defender, C.H. Gardner, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted, following a trial by jury, of Count I, Criminal Deviate Conduct, Ind.Code § 35–42–4–2 (Burns 1979), Count II, Conspiracy to Commit Criminal Deviate Conduct, Ind.Code § 35–41–5–2 (Burns 1979), and Count III, Criminal Confinement, Ind.Code § 35–42–3–3(a)(2) (Burns Supp.1982), and was sentenced to thirty-five (35) years imprisonment. This direct appeal presents the following issues:

1. Whether the evidence is sufficient to sustain the convictions.

2. Whether the trial court erred in denying Defendant's motion to transfer venue to Martin County.

3. Whether Defendant was denied the effective assistance of counsel.

4. Whether Ind.Code § 35–42–3–3(a)(2) is unconstitutionally vague and overly broad.

\* \* \*

## ISSUE I

Defendant raises three unrelated challenges to the sufficiency of the evidence. At the outset, we note our standard of review:

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." *Loyd v. State,* (1980)

## A.

Defendant first contends that the only evidence of an agreement to commit Criminal Deviate Conduct between himself and his cohort was contained in his statement to the police, which contains the following:

"We were drinking and this guy (the victim) came over to our table and sat down next to Danny Sears. In a little while, Danny Sears told me this guy was 'odd' or 'queer' and Danny said we would take him out in the country."

He argues that this statement evidenced no agreement to commit a felony. We agree that, standing alone, the statement was not adequate proof of conspiracy; however, the requisite agreement or meeting of the minds may be proved by direct or circumstantial evidence. *Woods v. State,* (1980) Ind., 413 N.E.2d 572, 573. Within the context of the succeeding events, Danny Sears' statement, accompanied by Defendant's silent response, evidenced a meeting of the minds. After the statement was made, Defendant and Sears lured the victim to a remote location where, after further consultation, they brandished knives, threatened the victim, and forced him to perform fellatio upon them. The nature of the assault shed light upon the meaning and intent of the perpetrators' earlier discussion. That the assault was completed as a joint effort further suggested the existence of a conspiracy. *See Patterson v. State,* (1979) 270 Ind. 469, 478, 386 N.E.2d 936, 942, *cert. denied,* (1979) 444 U.S. 935, 100 S.Ct. 283, 62 L.Ed.2d 194; *Turner v. State,* (1970) 255 Ind. 427, 429, 265 N.E.2d 11, 12; *Johnson v. State,* (1968) 251 Ind. 182, 190–91, 240 N.E.2d 70, 75; *Steffler v. State,* (1952) 230 Ind. 557, 564–65, 104 N.E.2d 729, 733; *Steadman v. State,* (1979) 179 Ind.App. 456, 385 N.E.2d 1200, 1202. The evidence was sufficient to allow the jury to find beyond a reasonable doubt, that shortly after they met the victim at the tavern, Defendant

conspired with Danny Sears to force the victim to perform fellatio upon them.

### B.

■ Defendant next argues that there was no evidence of the removal of the victim by "enticement" as alleged in the count charging Criminal confinement. He notes that the victim testified that he voluntarily accompanied Defendant and Sears and thought that he was merely on a joy ride.

This argument overlooks the totality of the circumstances and the reasonable inferences susceptible of being drawn therefrom. The criminal design had been formed at the tavern prior to the victim's consensually accompanying his assailants. Issue I, *supra.* The group first went to a swimming quarry upon the pretext of viewing girls skinny dipping. The conversation had turned to the matter of locating female companionship. Upon arrival they were informed that the quarry was closed. They returned to the tavern where they switched to Defendant's automobile and proceeded to a liquor store where Defendant and Sears purchased vodka and soft drinks, which the group consumed. The victim remained in the back seat of a two-door vehicle. They then drove to a gas station/grocery store near Fayetteville where the victim and Sears purchased cigarettes while Defendant purchased fuel. On the pretext of checking upon a rental or mortgage payment due Sears, the victim, thinking he was on a "Joyride," was lured into accompanying his assailants to the scene of the attack. A police officer, who knew the victim, testified that the victim was mentally slow and acted like a little boy.

From this evidence, the jury could reasonably infer that Defendant and Sears turned the conversation to sex to arouse the victim's libido. They may have intended to execute the conspiracy at the swimming quarry, but they were thwarted and instead attempted to ply the victim and further gain his confidence, with alcoholic beverages. They continued the ruse with a falsehood about the purpose of their trip, and Defendant may have stopped for gasoline to create the impression that the impending journey would be longer than the one that actually occurred. Viewed in this light, the evidence was sufficient to allow the jury to find, beyond a reasonable doubt, that Defendant, possessed of a criminal motive, enticed the victim in order to lure him to a remote location for purposes of an assault.

### C.

Lastly, Defendant challenges the proof of the venue of the offenses, a matter we discuss fully in Issue II, *infra.*

### ISSUE II

■ Defendant contends that the trial court erred in denying his motion to transfer Counts I and III to Martin County. At trial, the parties stipulated that the assault had, apparently by the fortuity of the curves in the road, occurred in Martin County. Defendant argues that there is no evidence to show a criminal confinement or an act of criminal deviate conduct in Lawrence County. He asserts that Indiana law, *see Rodriguez v. State,* (1979) 270 Ind. 613, 615, 388 N.E.2d 493, 494–95; *Workman v. State,* (1939) 216 Ind. 68, 75, 21 N.E.2d 712, 715, requires the conspiracy charged to be tried in the venue where the underlying felony was completed. We need not decide this question. At the time of the instant offenses Ind.Code § 35–1.1–2–1(d) (Burns 1979) provided:

> "If the commission of an offense is commenced in one county and is consummated in another county, trial may be had in either of the counties."

Based upon the evidence, the criminal transaction commenced in Lawrence County, where the conspiracy was fomented, and ended in Martin County, where the assault occurred; consequently, under the statute then in effect, Lawrence County was a proper venue for all the charges. *See Osborne v. State,* (1981) Ind., 426 N.E.2d 20, 22 (Kidnapping and Theft arising from a single chain of events properly tried in Adams County where the Theft had occurred in Delaware County); *French v. State,* (1977) 266 Ind. 276, 284–85, 362 N.E.2d 834, 839

(multiple offenses arising from a continuous chain of events properly tried in Henry County upon a change of venue from Madison County, where one offense, a homicide, had occurred in Hamilton County); *Spoonemore v. State,* (1980) Ind.App., 411 N.E.2d 146, 147 (Defendant was properly tried in Delaware County where the victim was abducted in Delaware County and raped in Henry County). There was no error in the trial court's denial of Defendant's motion.

### ISSUE III

 Defendant contends that he was denied the effective assistance of counsel in that counsel failed to object to admission of evidence which inferred prior encounters with the police. Specifically, counsel allowed the photographic array ("mug shots") from which the victim had identified Defendant to be admitted. He also allowed a police officer to testify that another police officer had had prior contact with him. Further, the officer, who recovered the knife while searching Defendant's automobile, with consent, testified that he was at that time working on an unrelated matter, and another officer testified that he had known Defendant since 1977. There is no evidence to show that any of these incidents revealed Defendant's prior criminal record. The officer who had assembled the photographic array did not relate where he had obtained the photographs, and prejudicial information contained thereon had been covered with opaque white tape used by the court reporter to identify exhibits. *See Strong v. State,* (1982) Ind., 435 N.E.2d 969, 972. The remainder of the testimony complained of does not command the inference that Defendant had a criminal record. Given such ambiguity, an objection containing the requisite specific grounds therefore may well have caused the jury to draw the prejudicial conclusion not otherwise disclosed by the substance of this testimony. Thus, counsel's failure to object may have been a tactical choice. Additionally, Defendant has not shown that, if counsel had objected to the admission of the photographs and testimony, the trial court would have had no choice but to exclude them. *Beard v.*

*State,* (1981) Ind., 428 N.E.2d 772, 774. There is no merit to Defendant's claim.

### ISSUE IV

 Lastly, Defendant contends that Ind.Code § 35–42–3–3(a)(2) is unconstitutionally vague and overly broad. He reasons that the elements of the offense of criminal confinement charged in this case, knowingly or intentionally removing another person from one place to another by enticement, could conceivably describe much concededly lawful and innocent activity.

Defendant did not move to quash the information on this or any other ground prior to trial. Neither did he raise this issue in the Motion to Correct Errors. As a result, he has preserved nothing for review upon this claim. *Brown v. State,* (1970) 254 Ind. 504, 506–07, 260 N.E.2d 876, 877.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.